United States District Court
Southern District of Texas
**ENTERED**
September 28, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FIDEL FLORES,                                 §
                                              §
            *Petitioner*,                     §
                                              §
v.                                            §        CIVIL ACTION NO. H-20-2252
                                              §
BOBBY LUMPKIN,                                §
                                              §
            *Respondent*.                     §

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate represented by counsel, filed this habeas petition challenging his state conviction under 28 U.S.C. § 2254. Respondent filed a motion for summary judgment (Docket Entry No. 10), to which petitioner filed a response in opposition (Docket Entry No. 15).

Having considered the motion, the response, the pleadings, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons shown below.

## I. BACKGROUND AND CLAIMS

A jury found petitioner guilty of aggravated sexual assault of a child under the age of six and assessed a forty-five year sentence. The conviction was affirmed on appeal, *Flores v. State*, No. 14-15-00754-CR (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd), and discretionary review was refused. Petitioner's application for state habeas relief was denied.

Petitioner timely filed the instant federal habeas petition, claiming that trial counsel was ineffective in failing to

1.  object to inadmissible expert and lay witness testimony concerning truthfulness;

2.  object to the jury instructions not requiring a unanimous verdict;

3.  object to extraneous bad acts evidence presented by the State without notice; and

4.  present available mitigating punishment evidence.

Respondent argues that these claims have no merit and should be dismissed.

## II.  STATEMENT OF FACTS

In affirming petitioner's conviction, the intermediate state court of appeals set forth the following statement of facts in its opinion:

> Appellant is complainant's uncle; appellant's brother is complainant's father. Appellant lived with complainant, complainant's mother, and complainant's father in their one-bedroom apartment during the time frame relevant to the allegations in this case.

> Complainant's mother began working three days a week beginning in 2011. On the days she worked, complainant's mother left appellant as the sole caretaker of complainant. There were no problems initially, but beginning in March 2012 complainant started complaining of rectal pain and began exhibiting anger and aggression towards appellant.

> On May 29, 2012, complainant—who was four years old at the time—told his mother that he did not want to stay with appellant during the day. When asked why, complainant replied that appellant would put a "stick" in his "culito"—the term complainant used to refer to his anus.

Complainant's mother told his father about complainant's outcry but complainant's father did not believe that appellant had sexually assaulted complainant. Complainant's father refused to evict appellant from the apartment. Complainant's mother left complainant with appellant the next day because she did not have anybody else to watch him, but she promptly made alternate childcare arrangements for complainant.

Appellant picked complainant up from school one day near the end of September 2012 because the person who would normally pick complainant up was unavailable. The next morning complainant told his mother that appellant had sexually assaulted him again the previous afternoon.

Complainant's mother took complainant to his pediatrician on October 2, 2012. Complainant's mother told the pediatrician that complainant had been complaining of rectal pain for three months. The pediatrician observed that complainant had a small tear and an area of thinning in the anus. The pediatrician believed the rectal pain was a result of constipation and prescribed a stool softener. Complainant's demeanor was normal and neither complainant nor complainant's mother mentioned sexual abuse at that time.

Complainant's mother took complainant to the pediatrician again on October 23, 2012, because of continuing rectal pain. During that appointment, complainant told the pediatrician that appellant had "put a stick in his bottom several times." The pediatrician reported the abuse to police and to Child Protective Services.

Appellant was charged with a single count of aggravated sexual assault of a child. The jury found appellant guilty and the trial court assessed punishment at 45 years' imprisonment.

*Flores*, at *2–3 (footnote omitted).

Petitioner disputes the appellate court's statement that the pediatrician observed a small anal tear on October 2, 2012. Petitioner correctly notes that the medical records show that the tear was not observed until October 23, 2012, and that the medical record dated October 2, 2012, made no mention of an anal tear. (7 RR 38.) However, Dr. Porras testified

3

at trial that, during his physical examination of the complainant's anal area on October 2, 2012, he observed a small tear with an area of thinning. (3 RR 146–147.)  He prescribed a stool softener in the event the complainant was experiencing constipation. *Id.*, p. 149. Porras further testified that, during his subsequent physical examination of the complainant on October 23, 2012, he observed a small fissure in the complainant's anal area. *Id.*, p. 155. These alleged discrepancies, however, are not relevant to the Court's disposition of petitioner's habeas claims.

### III. LEGAL STANDARDS

A.     <u>Habeas Review</u>

This petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

4

However, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–103 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31. This presumption of correctness extends not only to express factual findings, but also to implicit or unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018).

B.    Deferential Review

Petitioner contends that this Court need not apply the AEDPA deferential standard of review to the state courts' decisions regarding three of his four claims.  In support, he states that the Texas Court of Criminal Appeals issued a written order on collateral review expressly denying relief on the jury charge issue, which was only one of his four habeas claims.  He argues that, because the court did not deny relief "on the merits" as to his other three habeas claims, this Court can review those claims *de novo*.

Petitioner's argument is incorrect, as it takes the state courts' actions out of context. The state trial court recommended that habeas relief be granted as to petitioner's claim regarding the jury charge; however, it rejected petitioner's other habeas claims.  The Texas Court of Criminal Appeals, upon review of the trial court's recommendation, disagreed with the trial court and issued an order to that effect on June 24, 2020.  (Docket Entry No. 12-19, p. 1.) The Texas Court of Criminal Appeals *also* contemporaneously issued an order denying habeas relief as to the application for state habeas relief.  (Docket Entries No. 12-15, p. 1, "Denied with written order," issued June 24, 2020; No. 12-16, p. 1, same.)  Consequently, the Texas Court of Criminal Appeals denied relief on the merits as to all four of petitioner's habeas claims, and the AEDPA standard of review apply to all claims in this proceeding.

C.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. ANALYSIS

A federal habeas petitioner's claim that he was denied effective assistance of counsel is measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.

*Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Strickland*, at 694.

Claims of ineffectiveness are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of section 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the merits of an ineffective assistance claim, this Court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d).  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  In such cases, the "pivotal question" for this Court is not whether defense counsel's performance fell below *Strickland*'s standards, but whether the state

8

court's application of *Strickland* was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101, 105 (2011).

Petitioner claims that trial counsel was ineffective in the following instances.

A.   <u>Testimony as to truthfulness</u>

Petitioner claims that trial counsel failed to object to inadmissible expert and lay witness testimony concerning the complainant's truthfulness.

Trial counsel submitted the following affidavit on state collateral review, responding to petitioner's claim as follows:

> During [petitioner's] trial, the State repeatedly sought to introduce testimony that I felt was improper in light of the Texas Court of [Criminal] Appeals' longstanding holding from *Yount v. State* that Rule 702 of the Texas Rules of Evidence does not permit an opinion that the complainant, or class of persons to which the complainant belongs, is truthful. *Yount v. State*, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993). Of course such testimony is not permitted and is inherently harmful because it "does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue' but rather, it *decides* an issue *for* the jury." *Yount*, 872 S.W.2d at 709 (emphasis from original).
>
> As the record reflects, I attempted to keep this harmful testimony out by objecting several times throughout the trial. Indeed, knowing how harmful this testimony would be in our trial, it was my strategy to keep it out in some instances. Despite my repeated objections and complaints to the trial court, the State unfairly, and in direct violation of binding precedent, kept offering the inadmissible evidence. And as the Court of Appeals recognized, at various points, the trial court erred in letting the inadmissible expert testimony into evidence.
>
> The Court of Appeals ultimately decided that the trial court's errors, in letting inadmissible expert testimony into evidence, did not harm [petitioner] because the same or similar testimony was admitted, without objection, at other points in the record. It was my intention and strategy to keep this harmful evidence out, as evidenced by my repeated objections in some instances. I also d[i]d not

object in several instances because I did not believe the testimony to be that damaging. For example, the complainant's mother testified, after objection to the question, that she believed the child because the allegations "were terrible." In my opinion, the witness never gave an opinion as to the character or veracity of the child *per se*; instead, her testimony was based on the nature of the outcry and not on the believability of the child. Moreover, the mother never took the child to the police until three months later and [after] a second outcry. In addition, the complainant's mother never mentioned the allegations to Dr. Porras on two occasions and the child never mentioned the violation to Dr. Porras the first visit. The child also appeared calm at the first visit. Finally, despite hearing the first outcry, the complainant's mother left the child alone with the defendant on one occasion and never had the defendant removed from the home. In other words, her opinion at trial was not consistent with her actions before that testimony.

The testimony of the pediatrician involving believability of the child was likewise not that damaging. The testimony of the pediatrician was not an opinion to the complainant's truthfulness, so I did not object. I did object to some questions relating to consistency being and [*sic*] indicator of truthfulness, but I felt that the questions did not specifically inquire about this child's truthfulness. In fact, I wanted the doctor to make this assessment because in fact this child was not so consistent. For example, the child did not mention both incidents allegedly committed by the defendant at all times. Also, the consistency in this case was suspicious in my opinion and indicated the mother's rehearsal of complainant. More importantly, the doctor changed his initial opinion that complainant suffered from constipation not sexual abuse. The opinion by the doctor only changed when he heard the child's complaint and was not based on medical diagnoses[.] I wanted to emphasize to the jury the medical diagnoses did not support the doctor or child's testimony regarding sex abuse.

Another reason I did not always object to testimony relating to credibility of complainant is because I did not believe the testimony always relate [*sic*] to credibility *per se* or constituted of [*sic*] characteristics of child abuse of a victim in general. The strategy I employed in the defense of my client also dictated my decision to object. I definitely intended to use the complainant's father as a witness to establish the child was not believable and did not want the judge to exclude that testimony. I intended to argue that the State did the same thing if the State objected to the testimony of the father. I also intended to use the second outcry that I felt was suspicious because it was supposedly

made to the mother the same outcry witness in the first complaint by the child and served her purpose to remove defendant from the home. Furthermore, I felt I objected to the objectionable believability testimony and do not feel I waved any objections later given the fact that the testimony was different in nature. Also, I did not want to object repeatedly in front of the jury and felt the judge would overrule my objections to all potential credibility evidence. Instead, I wanted the jury to see the prosecutor's blatant disregard of the evidence and court rulings.

While indeed I did not feel the testimony elicited by the State or its questions of witnesses involving believability of the complainant was always proper, I also felt that it was not harmful and sought to introduce such evidence myself through the child's father. I do not remember specifically each witness in this case. It has been three years since the trial and I have suffered a heart attack, experienced open-heart surgery, a carotid artery surgery, and four heart procedures.

In conclusion, I indeed vigorously objected to believability evidence in general. I do not feel I was not deficient [*sic*] in representing my client if I failed to object to some questions I should have objected to. I clearly had a strategic purpose in not objecting in some instances. However, this case posed substantial obstacles. The medical evidence indicated some violation of the child had occurred and the child accused my client in a forceful manner. Also, the defendant fled the country when the accusations were raised by the child. In addition, the prosecution, directly and indirectly, aggressively posed credibility questions to witnesses even after the Court sustained my objections to those credibility questions.

(Docket Entry No. 12-18, pp. 301–03.) Trial counsel also answered specific questions posed by petitioner and the prosecution, as ordered by the trial court. *Id.*, pp. 303–308.

In rejecting petitioner's ineffective assistance claim, the trial court on collateral review made the following relevant findings of fact:

> 8.   On September 16, 2019, trial counsel, Ralph Martinez, filed an affidavit responding to the applicant's claims [of ineffective assistance of trial counsel].

11

9.     The trial court finds the affidavit of Ralph Martinez to be credible.

10.    [T]he applicant claims he was denied the effective representation of counsel at trial when trial counsel failed to object to inadmissible expert and lay opinion evidence regarding truthfulness.

11.    Trial counsel objected to this evidence several times throughout the trial.

12.    At times, the trial court sustained trial counsel's objections.  At times, the trial court overruled his objections.  At times, trial counsel did not object.

13.    Trial counsel did not always object because he wanted to show the witnesses were consistently fabricating and failing to disclose evidence they disclosed other times.

14.    The State charged the applicant with conduct committed on or about June 1, 2012.

15.    During trial, the State presented evidence that the complainant was sexually abused on at least two occasions: one around the end of May 2012, and one in late September 2012.

16.    It was trial counsel's trial strategy to show that the complainant was consistent in his disclosures about the abuse because he was consistently lying.  Trial counsel's theory was that the complainant had been coached and manipulated by his mother who wanted the applicant out of the house.  Trial counsel wanted to show that the complainant consistently failed to disclose the uncharged offense (the offense that occurred in late September 2012).

17.    Trial counsel did not object to pediatrician Dr. Giro Porras'[s] testimony that what the complainant told the officer was consistent with what the complainant said earlier because consistency does not equate to credibility.  Trial counsel's strategy was to show the complainant was consistently lying and that he was coached by others like his mother and child protection workers.

12

18.   Trial counsel did not object to Dr. Giro Porras'[s] testimony that there was reason to believe some sort of sexual encounter occurred because trial counsel wanted to show that regardless of any observation, no notation of sexual abuse was made by the doctor or reported to authorities. Additionally, the doctor never said that the applicant was identified as the person who committed the alleged assault.

19.   Trial counsel did not object to Officer Montoyis Knotts'[s] testimony that sensory details are important because such details lend to the credibility of the outcry because trial counsel did not take it as a comment on the complainant's credibility. Trial counsel's position was that details show memorization by the complainant and manipulation by the mother and child abuse investigators. Additionally, trial counsel wanted to show that despite the details, the complainant never mentioned the uncharged incident he reported to his mother.

20.   Trial counsel did not object to Tasha Roger-James's testimony that sensory details are important because such details "add validity to what the child has experienced[;] it would be difficult to describe something that is memorized as opposed to having a sensory attached to it" because trial counsel did not believe the answer made sense. He did not want to highlight the answer by objecting to it.

21.   Trial counsel did not object to Tasha Roger-James's testimony that the complainant was consistent in telling of his abuse because to trial counsel, consistency meant being consistent in telling a false story, consistent in not disclosing the uncharged abuse, and memorization and manipulation, not credibility.

22.   Because he did not find the answer harmful, trial counsel did not object to Dr. Danielle Madera's testimony that there is no specific type of emotion she would expect to see with a child to think that someone should be able to believe the child's word.

23.   Trial counsel did not object to Dr. Madera's testimony that sensory details are important in determining the reliability or validity of the disclosure because Dr. Madera was not specifically talking about the complainant. Additionally, Dr. Madera said that she did not have work experience in that area.

24. Trial counsel objected to Dr. Madera's testimony that in her experience, children do not typically lie about sexual abuse, but the trial court overruled the objection. Trial counsel did not want to move to strike Dr. Madera's answer because he did not want to highlight it.

25. Trial counsel did not object to Dr. Madera's testimony that children don't know how to lie about things such as sex, because Dr. Madera did not testify that the complainant did not have that knowledge or that the knowledge wasn't given to him by his mother.

26. Trial counsel did not object to Staci Passe's testimony that the complainant seemed authentic because he wanted to argue that the complainant was authentic and traumatized yet never reported the uncharged incident.

27. Trial counsel did not object to the complainant's mother's testimony that the complainant was consistent because consistent to him meant consistent in telling a false story, consistent in not disclosing the uncharged abuse, and showed memorization and manipulation, not credibility.

28. Trial counsel did not object to the complainant's mother's testimony that what the complainant told Dr. Porras was the same thing he told her because Dr. Porras heard it from the mother and child, yet never noted sex abuse in his report or reported it. Trial counsel felt he could show the doctor did not believe the allegations.

29. Trial counsel believes that he objected to the complainant's mother's testimony that she believed the complainant, but he was overruled.

30. Trial counsel did not object to the complainant's mother's testimony that she believed the complainant.

31. Trial counsel wanted to show the complainant said penetration with a stick and later show that was not supported by the medical evidence.

32. Trial counsel did not object when the applicant testified that the complainant had been consistent regarding the type of sexual abuse with each witness that testified at trial because it was consistent with his trial strategy that consistent meant consistent in telling a false story,

14

consistent in not disclosing the uncharged abuse, and memorization and manipulation not credibility.

(Docket Entry No. 12-18, pp. 329–332, record citations omitted.)   The state court also made the following relevant conclusions of law:

> 6.   This Court finds that the applicant fails to show trial counsel's repeated failure to object to the inadmissible expert and lay testimony concerning truthfulness of the complainant, and of the class of persons to which the complainant belongs, constitutes deficient performance by counsel.

> 7.   After consideration of the totality of the evidence, this Court finds that trial counsel's repeated failure to object to the inadmissible testimony did not prejudice the defense.

*Id.*, p. 337.   The Texas Court of Criminal Appeals denied habeas relief.   (Docket Entry No. 12-15, p. 1, No. 12-16, p. 1.)

Petitioner argues first that this Court need not accord deference to the state court's findings as to this claim because no merits determination was made by the Texas Court of Criminal Appeals.   As the Court noted earlier, petitioner's argument is incorrect, as the Texas Court of Criminal Appeals denied habeas relief, thus rejecting on the merits all of petitioner's habeas claims.   That it issued a specific order as to one of the four claims does not negate the overriding fact that it denied *all* of petitioner's claims.   Thus, this Court will apply the AEDPA standards of deferential review to all of petitioner's claims.

Petitioner argues next that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. He further contends that counsel's failure to object to the inadmissable expert witness

testimony did not constitute a reasonable trial strategy.  These complaints are little more than disagreements with the state court's determinations and decision, and do not meet petitioner's burden of proof under AEDPA.  The record shows that trial counsel set forth a thorough explanation of his actions, his reasons for those actions, and how the actions fit his trial strategies.  The trial court found counsel's affidavit testimony to be credible, and determined that petitioner failed to establish deficient performance or prejudice under *Strickland*.  That a trial strategy was ultimately unsuccessful or a different attorney would have used a different trial strategy does not establish ineffective assistance of counsel.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004).

The Texas Court of Criminal Appeals rejected petitioner's claims for habeas relief on collateral review.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment  dismissal of this claim for ineffective assistance of counsel.

B.    Jury instructions

Petitioner also complains that trial counsel should have objected to the jury instructions because they did not require a unanimous verdict.  According to petitioner, had counsel raised the objection, the results of his trial would have been different or his conviction would have been reversed on direct appeal.  (Docket Entry No. 7, pp. 70–71.)

Petitioner challenged the validity of the jury charge on direct appeal. He argued that the jury charge erroneously allowed a non-unanimous verdict, and that the error should be reviewed under the constitutional harm standard of Texas Rule of Appellate Procedure ("TRAP") 44.2(a).

The intermediate state court of appeals agreed that evidence of two separate instances of sexual abuse had been presented at trial, and that the charge failed to require the jury to agree unanimously on which of the two instances the verdict was based. *Flores v. State*, 513 S.W.3d 146, 154 (Tex. App. – Houston [14th Dist.] 2016, writ ref'd). The court noted that a constitutional unanimity violation is subject to the constitutional harm standard of TRAP 44.2(a) when properly preserved by a timely and specific objection at trial. If, as here, no objection is made, the constitutional unanimity component of the complaint is forfeited, and the defendant must demonstrate egregious harm to warrant a reversal. *Id.* at 158. The court reviewed the evidence and determined that no harm had been shown:

> Although the jury charge in this case permitted a non-unanimous verdict, the evidence presented combined with the jury's rejection of appellant's defense demonstrates that *appellant did not suffer actual harm*. *See Arrington*, 451 S.W.3d at 845 ("Although the instructions failed to identify the particular acts necessary to support each count, the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm to appellant.").

*Id.* at 161, emphasis added.

Subsequently, on state habeas review, petitioner argued that trial counsel was ineffective in failing to raise a constitutional unanimity objection to the jury charge. Relying

17

on the intermediate appellate court's opinion, petitioner argued that, had counsel objected, the result of the proceedings would have been different.  In agreeing with petitioner, the state trial court made the following relevant findings of fact on habeas review:

36.　　[T]he applicant claims he was denied the effective representation of counsel at trial when trial counsel failed to object to the jury instructions that did not require a unanimous verdict.

37.　　Trial counsel did not assert any objections to the court's jury charge.

38.　　The applicant challenged the jury charge on direct appeal.

39.　　The appellate court found that the jury charge erroneously allowed for a non-unanimous verdict.

40.　　The Texas Constitution requires jury unanimity in all felony cases, and Texas statute requires jury unanimity in all criminal cases.

41.　　Guaranteeing jury unanimity is ultimately the responsibility of the trial judge, and the trial judge is therefore obligated to submit a charge that does not allow for the possibility of a non-unanimous verdict.

42.　　Trial counsel must timely and specifically object to a jury charge that allows for the possibility of a non-unanimous verdict in order to preserve the Texas constitutional right to a unanimous verdict on appeal.

43.　　When an erroneous jury charge allowing a non-unanimous verdict is properly preserved, the constitutional harm standard under [TRAP] 44.2(a) applies.

44.　　Under the constitutional harm standard, the court of appeals *must* reverse [a] judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

45. Because trial counsel did not object to the jury charge the court of appeals did not apply the constitutional harm standard but instead applied the egregious harm standard.

46. For error to be egregious, it must have affected the very basis of the case, deprived the accused of a valuable right, or vitally affected a defensive theory.

47. The appellate court found that although the jury charge allowed for a non-unanimous verdict, the record demonstrates that the applicant did not suffer egregious harm.

        \*　　\*　　\*　　\*

61. The appeals court held that "it is very unlikely that any member of the jury believed that the second incident took place but that the first did not."

(Docket Entry No. 12-18, pp. 337–339, citations omitted, emphasis in original.)  The state

trial court also made the following relevant findings, labeled as conclusions of law:

9. This Court finds that trial counsel's failure to timely and specifically object to the erroneous jury charge that permitted a non-unanimous verdict constituted deficient performance by counsel.

10. This Court finds that trial counsel's failure to object to the erroneous jury charge prejudiced the defense by allowing a jury instruction that allowed a non-unanimous verdict from the jury.

11. The court finds that had trial counsel timely and specifically objected to the erroneous jury charge, the court of appeals would have applied [TRAP] 44.2(a).

        \*　　\*　　\*　　\*

13. The court finds that despite the appeals court finding that it was "unlikely that different members of the jury convicted the [applicant] based on different instances of conduct" a reasonable doubt still exists

19

that one or more jurors did convict based on different instances of
conduct.

14.　The court finds that had the appeals court applied analysis under
[TRAP] 44.2(a) the existence of a reasonable doubt as to the unanimity
of the jury verdict would have required the court of appeals to reverse
the conviction.

\*　　\*　　\*　　\*

18.　As such the court finds that but for trial counsel's deficient
performance regarding his failure to timely and specifically object to
the erroneous jury charge allowing a non-unanimous jury verdict the
outcome of his appeal would have been different resulting in a reversal
of his conviction in the trial court.

*Id.*, pp. 342–343, original emphasis.　The state trial court then made the following

recommendation to the Texas Court of Criminal Appeals:

In light of these findings, it is the recommendation of this Court that Mr.
Flores's application for a writ of habeas corpus be GRANTED, and that
Flores's conviction, sentence, and certification be ordered set aside for
disposition in accordance with the laws of the United States of America and
the State of Texas.

*Id.*, p. 343.

The Texas Court of Criminal Appeals, however, was not of like mind.　The court did

not adopt the trial court's findings and recommendation as to the jury charge issue, and

denied relief in a separate written order:

Applicant was convicted of super aggravated sexual assault of a child under
six and sentenced to forty-five years' imprisonment. The Fourteenth Court of
Appeals affirmed his conviction. *Flores v. State*, 513 S.W.3d 146 (Tex.
App.—Houston [14th Dist.] Nov. 29, 2016, pet. ref'd.). Applicant filed this
application for a writ of habeas corpus in the county of conviction, and the

district clerk forwarded it to this Court.  See TEX. CODE CRIM. PROC. art.
11.07.

Applicant contends that trial counsel was ineffective because counsel did not
object to the jury instructions which did not require an unanimous verdict. The
trial court determined that trial counsel's performance was deficient and that
Applicant was prejudiced.  However, the trial court analyzed the case under
the appellate standard of review for jury charge issues rather than the
*Strickland* standard, which focuses on harm at trial.

Based on the Court's review of the record, this Court finds that Applicant has
not satisfied the prejudice component of his ineffective assistance of trial
counsel claim. *Strickland v. Washington*, 466 U.S. 668 (1984).  Therefore, we
deny relief.

(Docket Entry No. 12-19, p. 1.)  The court issued the written order in conjunction with an

order denying petitioner's application for habeas relief.  (Docket Entry No. 12-15, p. 1, No.

12-16, p. 1.)

    The pivotal question for this Court under AEDPA is not whether trial counsel's failure

to object fell below *Strickland*'s standards or caused actual prejudice, but whether the state

court's application of *Strickland* was unreasonable.  Moreover, the AEDPA standard of

review looks not to whether the Texas Court of Criminal Appeals erred in not adopting the

trial court's findings, but whether its own application of *Strickland* was unreasonable or

resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence in the record.

    To establish actual prejudice under *Strickland*, a petitioner must establish that, but for

counsel's deficient performance, there is a reasonable probability that the results of the

proceeding would have been different.  The Texas Court of Criminal Appeals essentially

found that actual prejudice was not established, in that petitioner failed to show that, but for trial counsel's failure to object, there is a reasonable probability that the results of the trial would have been different. The court's application of *Strickland* was reasonable. Moreover, petitioner does not establish actual prejudice in terms of his trial results. Had the charge been corrected to add a proper unanimity instruction, it is purely speculative at this point whether the verdict would have been different.[1]

Petitioner argues that the Texas Court of Criminal Appeals misapplied *Strickland* by limiting "the proceeding" to trial proceedings without encompassing appellate proceedings. According to petitioner, he established actual prejudice under *Strickland* because, but for counsel's failure to object to the jury charge, he would have prevailed on appeal by virtue of TRAP 44.2(a). In support, he cites *Strickland*, 466 U.S. at 694, *Lee v. United States*, 137 S. Ct. 1958, 1969–70 (2017), and *Little v. Johnson*, 162 F.3d 855, 860–61 (5th Cir. 1998), for their use of the terms "the outcome," "criminal prosecution as a whole," and "ultimate result," respectively, in reference to the actual prejudice prong. However, in none of the cases did the court apply those terms in the manner intended by petitioner. Although

---

[1] The state trial court found that "counsel's failure to object to the erroneous jury charge prejudiced the defense by allowing a jury instruction that allowed a non-unanimous verdict from the jury." (Docket Entry No. 12-18, p. 342, No. 10.) This finding, however, was not a finding of actual prejudice under *Strickland*, as the trial court did not find that, but for counsel's failure to object to the jury charge, there is a reasonable probability that the results of the trial (or proceeding) would have been different. The state trial court addressed prejudice in No. 18: "[T]he court finds that but for trial counsel's deficient performance regarding his failure to timely and specifically object to the erroneous jury charge allowing a non-unanimous jury verdict the outcome of his appeal would have been different resulting in a reversal of his conviction in the trial court." *Id.*, p. 343. This did not constitute a finding of actual prejudice as to the trial proceedings.

petitioner's view might be relevant to a *Strickland* claim premised on trial counsel's failure to preserve error for appeal, petitioner raised no such claim here.

Even if this Court were to accept petitioner's definition of "actual prejudice" – that is, "but for trial counsel's failure to object to the jury charge, there is a reasonable probability that the results of the appeal would have been different" – habeas relief would not be warranted under AEDPA. The intermediate state court of appeals did not address whether petitioner's conviction would have been reversed under TRAP 44.2(a) had counsel objected to the jury charge. According to petitioner, this Court must look to the state trial court's finding that his appeal would have been reversed on appeal under TRAP 44.2(a) had counsel "simply objected" to the jury charge. (Docket Entry No. 15, p. 16.) However, AEDPA deference to a state trial court's findings does not apply where, as in this case, they were expressly rejected by, or are directly inconsistent with, the highest state court's resolution of the case. *See Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008).

Neither petitioner nor the record establishes that, but for trial counsel's failure to object to the jury charge, there is a reasonable probability that the results of the appeal would have been different. TRAP 44.2(a) does not provide for automatic reversal of a conviction in light of constitutional error. To the contrary, the rule requires a harm analysis, in that reversal is warranted "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Although not in context of a constitutional harm analysis, the intermediate state court of appeals found that:

> Although the jury charge in this case permitted a non-unanimous verdict, the evidence presented combined with the jury's rejection of appellant's defense demonstrates that *appellant did not suffer actual harm*. *See Arrington*, 451 S.W.3d at 845 ("Although the instructions failed to identify the particular acts necessary to support each count, the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm to appellant.").

*Flores* at 161, emphasis added.

The Texas Court of Criminal Appeals on collateral review expressly denied this claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

C.    <u>Extraneous offense</u>

Petitioner contends that trial counsel should have objected to testimony that he gave gifts to the complainant, because it suggested petitioner was "grooming" the complainant for sexual favors. Specifically, he argues counsel failed to object to (1) testimony from the complainant's mother that petitioner gave him gifts and that the complainant was happy to receive them; (2) the complainant's testimony that petitioner gave him gifts; and (3) Dr. Madera's testimony that "grooming" can include gifts.

In responding to this allegation of ineffective assistance, trial counsel testified in his affidavit that, "I did not think that was objectionable. Complaint [*sic*] was close to petitioner

and the gifts showed it. There was nothing said that supported "grooming." (Docket Entry

No. 12-18, p. 307.)

In rejecting petitioner's claim, the state trial court made the following relevant

findings of fact on collateral review:

> 33.    [T]he applicant claims he was denied the effective representation of counsel at trial when trial counsel failed to object to extraneous bad-act evidence which was not noticed by the State.

> 34.    The applicant fails to show [that] purchasing gifts constitutes a bad act.

> 35.    Trial counsel did not object to testimony that the applicant purchased gifts for the complainant because he did not think it was objectionable. The complainant and the applicant were close and the gifts showed [it]. Trial counsel did not believe there was anything that supported grooming.

(Docket Entry No. 12-18, pp. 336–337, record citations omitted.)  The trial court also made

the following relevant finding as a conclusion of law:

> 8.    This Court finds that the applicant fails to show trial counsel's failure to object to the unnoticed extraneous bad act evidence of buying gifts constituted deficient performance by counsel.

*Id.*, pp. 341–342.  The Texas Court of Criminal Appeals denied habeas relief. (Docket Entry

No. 12-15, p. 1, No. 12-16, p. 1.)

The state trial court expressly found that petitioner failed to show that purchasing gifts

was a bad act.  Moreover, the record shows that Dr. Madera did not testify that *petitioner* was

grooming the complainant by buying him gifts.  To the contrary, the record shows that the

complainant was petitioner's nephew, and that they had a pre-existing family relationship.

Trial counsel reasonably declined to object to the complained-of evidence, and no deficient performance is shown. Nor does petitioner show that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different. Petitioner establishes neither deficient performance nor prejudice under *Strickland.*

The state court on collateral review rejected petitioner's claims for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

D.    Mitigation evidence

Petitioner contends that trial counsel was ineffective in failing to present mitigating evidence at punishment through the testimony of available friends and members of his family. In his application for state habeas relief, petitioner submitted several affidavits from members of his family, presenting proposed testimony as to petitioner's general character or examples of his good character. (Docket Entry No. 12-18, Exhibit 6.)

In his affidavit submitted on state habeas review, trial counsel testified in relevant part as follows:

(j)     [Petitioner] and his family provided me no mitigating evidence of value except testimony by family members. I wanted to limit punishment witnesses because his family, the mitigation witnesses I knew about also knew the circumstances and reasons for [petitioner's] flight when the charges were made. By not calling these witnesses I felt I would minimize this evidence.

Also, [petitioner] did not work or have any social outlets.  [Petitioner] also spent significant time with complainant, and I did not want to emphasize this.

(k)   The real obstacles in this case were significant. Firstly, [petitioner] fled the jurisdiction when he heard of the allegations against him.  Secondly, [petitioner] spent significant time with the complainant while alone with him. Thirdly, medical evidence, to some extent, supported the allegations. Fourthly, the allegations by the child were strong and confidently made.

\*   \*   \*   \*

23.   [Family members] knew the circumstances of [petitioner's] flight and I was afraid to "open the door" to it.

(Docket Entry No. 12-18, pp. 305, 307.)

In rejecting petitioner's claim that trial counsel was ineffective at the punishment hearing, the trial court on collateral review made the following relevant findings of fact:

62.   [T]he applicant claims he was denied the effective representation of counsel due to trial counsel's failure to present mitigating evidence during the punishment phase of trial.

63.   In order to investigate potential mitigating evidence, trial counsel interviewed the applicant's family members and asked for employment, church, and social organization records.

64.   Trial counsel does not recall their names, but the applicant provided him  with the names of three family members who could testify on his behalf.

65.   Although these family members were available to testily on the applicant's behalf, trial counsel did not call them because they knew the circumstances of the applicant's flight from the country after charges were filed, and trial counsel did not want to risk "opening the door."

66.   Trial counsel's reasons for not calling these witnesses was reasonable.

27

67.  Trial counsel called the applicant's daughter, Diana Rubio, to testify during the punishment phase of trial.

68.  Diana Rubio testified that the applicant was 59 years old, did not have a prior criminal record, worked before becoming disabled, has been in this country for approximately 30-35 years, was under a doctor's care, that he had had no incidents since being out on bond, and that she did not think he would be a future threat to children.

69.  Trial counsel does not recall being made aware of the following potential witnesses: (1) Will Blanco; (2) Leonor Damian; (3) Janie Flores; (4) Abel Cisneros; (5) Jasmine Escobar; (6) Jessica Flores; (7) Margarita Blanco; (8) Rosa Espitia; (9) Benigno Flores; (10) Ruberto [*sic*] Blanco; or (11) Maria Ortiz.

70.  Will Blanco, Abel Cisneros, Ruberto [*sic*] Blanco, Maria Oritz [*sic*], Margarita Blanco, Rosa Espitia, and Janie Flores are all members of the applicant's family.

71.  The applicant fails to show that he made trial counsel aware of these potential witnesses prior to trial.

72.  The applicant fails to show that trial counsel would have been able to call them without opening the door to the circumstances regarding the applicant fleeing the country.

(Docket Entry No. 12-18, pp. 333–340, record citations omitted.)  The state trial court also made the following relevant conclusions of law:

15.  The applicant fails to show trial counsel was ineffective for failing to investigate potential mitigating witnesses because the applicant only provided trial counsel with the names of three family members that could potentially testify during punishment and trial counsel had strategic reasons for not calling these witnesses.

16.  The applicant fails to show trial counsel was ineffective for not calling additional witnesses during punishment.

17.   The applicant fails to show that trial counsel's failure to present available mitigating punishment evidence constituted deficient performance by counsel.

*Id.*, p. 342. The Texas Court of Criminal Appeals denied habeas relief. (Docket Entry No. 12-15, p. 1, No. 12-16, p. 1.)

Trial counsel testified that he did not call members of petitioner's family to testify at punishment because he feared it would "open the door" to unfavorable testimony that petitioner fled the United States when the criminal charges were filed. The state trial court found that counsel's decision was reasonable trial strategy. That trial counsel did not want to provide the State an opportunity to emphasize petitioner's flight was reasonable. Petitioner's disagreement with the trial court's findings does not constitute grounds for habeas relief under AEDPA. Nor does petitioner establish that, but for counsel's failure to call the omitted witnesses at punishment, there is a reasonable probability that his sentence would have been significantly less harsh. *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Petitioner demonstrates neither deficient performance nor prejudice under *Strickland*.

The state court on collateral review rejected petitioner's claims for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

## V. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 10) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on this the 28th day of September, 2021.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE